LAURA E. LONNECKER, Respondent, v. FANNIE BORRIS, LEONARD BORRIS, CIPA SIDRANSKY and JESSIE MILLER, Appellants, No. 41476—229 S. W. (2d) 524.

Division Two, April 10, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, May 8, 1950.

*Clyde J. Linde, Billy S. Sparks* and *Langworthy, Matz & Linde* for appellants Fannie Borris, Leonard Borris and Cipa Sidransky.

*Raymond G. Barnett* for respondent Laura E. Lonnecker.

BARRETT, C.—In this action for personal injuries Mrs. Lonnecker asked for $25,000.00 damages against the owners-operators and manager of the Washington Hotel in Kansas City. After the plaintiff and all her witnesses had testified and after the plaintiff had offered instructions hypothesizing her theory of the defendants' liability the trial court directed the jury to return a verdict for the defendants. Subsequently the trial court sustained Mrs. Lonnecker's motion for a new trial for the specified reason "that the court (had) erred in granting a directed verdict for the defendants." It is insisted upon this appeal by the defendants that it is not a fair inference from all the circumstances presented by the evidence that the defendants owed or breached any duty to the plaintiff, or from which it is a reasonable inference that any claimed breach of duty was the proximate cause of the plaintiff's injuries. It is urged, therefore, that the trial court erroneously granted the plaintiff a new trial and that this court should remand the cause with directions to enter a judgment for all the defendants.

Mrs. Lonnecker had been a guest in the appellants' "third or fourth class" hotel for two years and for eight or nine months had occupied room 234 at a weekly rental of four dollars and fifty cents a week. She was sixty-eight years of age and weighed about 200 pounds. On July 12, 1946 she attempted to move a large, rather old-fashioned Morris chair in order to adjust it to the natural light of the window. The chair "came down low to the floor" and it was not possible to see under it. Mrs. Lonnecker took hold of the arms of the chair and as she was in the act of moving it the toe of a

gabardine shoe on her right foot was caught underneath the chair, causing her to fall. An investigation disclosed that there was a rather heavy, sharp-pointed wire hanging down from the mechanism under the chair, about an inch behind the front wooden apron and somewhat to the left of center. The wire was straight except that the sharp end hooked downward. The manager, Mrs. Miller, said that the wire was from a coiled spring, that a burlap strap on the chair had recently broken and the wire had pushed through the bottom of the chair in another place. The sharp wire had pierced the toe of Mrs. Lonnecker's gabardine shoe and she fell as she was in the act of moving the chair.

The appellants contend that there was no proof of any actual knowledge on the part of anyone of the condition of the chair or of how long the condition had existed and, since the appellants as hotelkeepers are not insurers of their guests' safety, there is no evidentiary fact or circumstance from which it can be inferred that they had failed in their duty to the plaintiff. It is their contention that there is no evidence from which it can be inferred that they failed in their duty to inspect or that their failure to inspect was the proximate cause of Mrs. Lonnecker's injury. To precisely illustrate the appellants' contention we excerpt from their argument: "We submit that in the exercise of reasonable care an ordinarily prudent person would not have foreseen that an injury would occur in the manner alleged by plaintiff even if such ordinarily prudent person had actual knowledge of a wire or end of a coil underneath a chair as found by plaintiff after her injury. * * * the alleged negligence which is in issue here is whether the defendants reasonably should have known of the condition in the one respect which plaintiff claims caused the injury." They admit that Mrs. Lonnecker "did complain of the chair generally to the defendants' manager, Mrs. Miller, and discussed it several times and said it was uncomfortable and needed repair" but, they say, "At no time did she complain of the specific condition which she alleged as the cause of her injury."

It will be observed that the defendants' argument is precisely centralized or focused upon the wire alone. And it may be said, had the broken hidden spring been the only circumstance concerning the chair, that the defendants' argument would be tenable. But the submissibility of the plaintiff's case is not to be measured alone by the precise defect of the wire and the defendants' notice or knowledge of it. We are not concerned here with whether there is substantial evidence in support of a jury verdict for the plaintiff. Neither are we concerned with whether there is substantial evidence in support of a finding that the plaintiff was guilty of contributory negligence. The problem here is whether the trial court was in error in its ultimate judgment that prima facie the

plaintiff had adduced such evidence that she was entitled to have her cause submitted to and passed upon by the jury. In that connection, in addition to the wire, the plaintiff hypothesized the defendants' liability upon a finding "that the attention of defendants was called to the need of said chair for repair and that they were careless and negligent in regard to plaintiff's safety in failing to repair or replace said chair, or that defendants knew or by the exercise of ordinary and reasonable care in regard to plaintiff's safety could have known of the dangerous condition thereof, if you find that it was dangerous, and carelessly and negligently failed to warn the plaintiff thereof; * * *." It was an old, out-of-date Morris chair and, as we have said, the defendants admit that Mrs. Lonnecker had complained of it generally to their manager, Mrs. Miller, "discussed it several times and said it was uncomfortable and needed repair." In describing the chair Mrs. Miller said: "Well, the springs were like springs frequently are that might become untied that were kind of bulging in places, and it was as Mrs. Lonnecker has said, uncomfortable. * * * Perhaps there was a low place as there would be if it was in that condition, but Mrs. Lonnecker had magazines placed over that and it wasn't so bad. * * * As I say—you see, these springs were somewhat like this (indicating) and there might have been a sag on one side. * * * when you sat in the chair it sagged down on one side very badly. * * * I told you there were high and low places in this seat and the one perhaps was lower than the other. * * * It sagged on one side, * * *." Mrs. Miller said that Mrs. Lonnecker's only complaint was that the chair was uncomfortable ▪▪▪ and that she, Mrs. Miller, sat in the chair and it was uncomfortable but, since that was the only complaint, she made no further investigation. Mrs. Lonnecker said that she had discussed the chair with Mrs. Miller several times and she had told her that the chair was uncomfortable. She said: "I hardly ever sat in it because it would just be like setting on your springs with a sheet over them." The chair had been in room 234 the eight or nine months Mrs. Lonnecker had occupied it and in describing its condition she said: " I told her it was uncomfortable, and I think one time I told her something was wrong with it. It was out of kilter some way. It needed repair. * * * Well, it was just—the leather there wasn't between it and the springs and the springs may have worn them a little thinner. * * * I told her that there was something wrong with my chair. It needed repair, and they are a low-seated chair anyway. * * * I said that it evidently needed some repair." On final cross-examination the subject was summarized in this manner: "Q. You meant there was something wrong with it because it was uncomfortable? A. That wasn't what I meant. There must have been something wrong to make it uncomfortable. Q. You meant there was some-

thing wrong with it that made it uncomfortable? A. It was out of kilter. Them was my words."

In these circumstances reasonable minds might well differ as to whether the defendants had breached their duty to the plaintiff and were therefore guilty of negligence proximately injuring the plaintiff. This is not to say as a matter of fact or of law, as we have indicated, that the defendants were or were not negligent, but it is to say, in all the circumstances detailed, that reasonable minds might well differ in resolving the question and, therefore, it is for a jury to draw the appropriate inference. The appellants as hotel-keepers are not insurers of the safety of their guests but they are under a duty to their guests to exercise reasonable or ordinary care to keep and maintain their premises and furnishings in a reasonably safe condition. "The law imposes a duty on an innkeeper or similar proprietor to furnish safe premises to his patrons and to provide articles of furniture which may be used by them in the ordinary and reasonable way without danger." 28 Am. Jur., Sec. 56, p. 578. As was said of an insufficiently lighted hotel stairway, "one has the right to rely upon the sufficiency of a structure or contrivance such as is in common use, and which, in the light of the experience obtained by its general use, has been found to answer the purpose for which it was designed and intended." Stein v. Buckingham Realty Co., (Mo. A.) 60 S. W. (2) 712, 713. The duty to protect, in this connection, is coextensive with the invitation. Kirby v. Moehlman, 182 Va. 876, 30 S. E. (2) 548, 551; Rumann v. Montfort, 168 Mo. A. 523, 526, 153 S. W. 1063. In all the circumstances the defendants' negligence and the plaintiff's contributory negligence with respect to this old-fashioned Morris chair, which "needed some repair" and was *out of kilter* ("order; proper condition," "proper form, adaptation, or condition," "proper order; good condition: used mainly in the (colloquial) phrase *out of kilter*"; Webster's New International Dictionary; Century Dictionary; Funk & Wagnalls Dictionary), were appropriate questions for the jury to resolve, as the trial court ultimately decided. Marden v. Radford, 229 Mo. A. 789, 84 S. W. (2) 947; Burnison v. Souders, 225 Mo. A. 1159, 35 S. W. (2) 619; Kirby v. Moehlman, supra; Stein v. Buckingham Realty Co., supra.

In this view of the case it is not necessary to pass upon the applicability of certain statutes (Mo. R. S. A., Secs. 9931 and 9940) and other matters briefed and argued. The trial court did not err in granting the plaintiff a new trial after it had directed a verdict for the defendants and, therefore, the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.