245 S.W.2d 53 (1951)
LONNECKER
v.
BORRIS et al.
No. 42546.
Supreme Court of Missouri, Division No. 2.
December 10, 1951.
Motion for Rehearing or to Transfer to Denied January 14, 1952.
*54 Clyde J. Linde, Billy S. Sparks and Lang-worthy, Matz & Linde, all of Kansas City, for appellants, Fanny Borris, Leonard Borris and Cipa Sidransky.
Raymond G. Barnett, John H. Foard and Barnett & Foard, all of Kansas City, for respondent, Laura E. Lonnecker.
Motion for Rehearing or to Transfer to Court en Banc Denied January 14, 1952.
TIPTON, Judge.
This is the second appeal of this action for personal injuries respondent received while a paying guest in a hotel operated by appellants. At the first trial, the trial court directed a verdict for these appellants at the close of respondent's testimony. Later, it sustained respondent's motion for a new trial and the appellants appealed to this court from that order. We affirmed the action of the trial court in sustaining the motion for a new trial and held that respondent's evidence was sufficient to submit the question of appellants' negligence to the jury and, also, that respondent was not guilty of contributory negligence as a matter of law. Our opinion on the first appeal is reported at 360 Mo. 529, 229 S.W.2d 524.
At the last trial the jury found the issues in favor of respondent and assessed her damages in the sum of $12,500, and a judgment was entered upon that verdict. The appellants have duly appealed.
There is no substantial difference between the evidence on behalf of respondent in the last trial and the evidence in the first trial.
The respondent had been a paying guest in appellants' hotel for over two years. The hotel was known as the Washington Hotel and she had occupied room 234 since November 1, 1945. The furnishings of this room consisted of a bed, dresser, table, a Morris chair and another chair. The Morris chair came within about 2 inches of the floor. The seat springs were "all bunched up" at one end and respondent testified it was "out of kelter."
On July 12, 1946, respondent started to move the chair and in so doing her right foot in some manner got caught underneath the chair on a wire, causing her to fall. She received severe injuries which will be more fully discussed later.
Mrs. Jessie Miller testified she was the manager of this hotel when it was purchased by appellants in May 1946, and was manager at the time respondent was injured. She testified that respondent complained to her about the Morris chair; that she sat in it and she knew it was uncomfortable; that the springs were sagging in it; and that after respondent said she caught her shoe, Mrs. Miller felt under the chair and felt a spring. It was like an *55 ordinary coil wire and was nearly level with the floor.
Appellants contend that this case should not have been submitted to the jury. First, they contend that there is no evidence that they failed "to exercise ordinary and reasonable care to keep the premises reasonably safe," and, second, that respondent "was guilty of contributory negligence as a matter of law."
These questions were presented in the first appeal and we ruled that the evidence was sufficient for the jury to find that appellants did not use ordinary care in keeping the premises safe for their patrons, and we further held that the question of contributory negligence was a question for the jury. The adjudication of that appeal and the questions presented constitute the law of this case and of this appeal unless the former ruling was palpably wrong or unless there is a substantial difference in the evidence and the facts upon the two trials. We have already stated that there is no substantial difference in the evidence in this appeal and the evidence in the former appeal. Nor is there any contention that our former ruling was palpably wrong. Moreover, we are of the opinion that our ruling in the first appeal was correct.
"The former adjudication is not only the law of the case as to all questions directly raised and passed upon but it is also the law of the case as to matters which arose prior to the first appeal and which might have been raised thereon but which were not raised or presented. 5 C.J.S., Appeal and Error, §§ 1821, 1823-1827, 1964a, pp. 1267-1281, 1499." Norris v. Bristow, 361 Mo. 691, 236 S.W.2d 316, loc. cit. 319.
We are bound by our rulings on the first appeal as the law of the case and of course hold that respondent's evidence made a case for the jury.
The appellants' next assignment of error is that the trial court refused to allow appellants to cross-examine respondent as to certain statements which appellants contend were inconsistent with statements made by respondent when she testified at previous trials and when her deposition was taken.
The questions asked by appellants to which the trial court sustained respondent's objections are as follows:
"Q. All right. Now, at the second trial do you remember that I called to your attention the difference in your testimony when you first said that you kicked your foot loose and the testimony at the second trial when you said you couldn't kick it loosethe testimony at the second trial when you said you couldn't kick it loose and had to take your hand and remove it? And do you remember when I asked you if you knew the difference between kicking and taking your hand, and you said that you did, but had no explanation? A. Perhaps you didn't give me time.
"Mr. Barnett: Wait just a minute. I object to counsel's questions; he infers there are differences which couldn't be harmonized. That is not necessarily the case; that is a question for the jury to pass on.
"The Court: I will sustain the objection.
"Mr. Linde: All right."
"Q. (By Mr. Linde) On page 89 of the transcript of the second trial I asked you: `Now, you know the difference, do you not, Mrs. Lonnecker, between kicking your foot loose and reaching down and reaching under the chair and disengaging a piece of metal from your gabardine slipper? You know the difference, do you not? Answer: Yes.' A. I do.
"Q. And at the second trial you made no explanation, did you, of why you had changed your testimony? A. I perhaps
"Mr. Barnett: I object to that, for the reason that the inference isit infers that the witness had changed her testimony; and for another reason, because it infers that there was an obligation upon her to make any explanation of anything.
"The Court: Sustain the objection."
"Q. Well, now, at the first trial you told Mrs. Ragland you didn't know what it was and she felt and told you it was a wire and then you got down and felt it and said, "This thing is sharp'? A. Well, my conversation beforeI told her I didn't know what it wasshe said, `Was it a spring that was down there?' I didn't go by *56 "Q. You didn't know it was a wire, but at the second trial you said while you were sitting on the floor'I knew it was a wire; I knew it was a wire when I felt it.' Which is right?
"Mr. Barnett: I object to that, nowwhich is right.'
"The Court: Sustained."
Of course, the question involving the fact that respondent "made no explanation" is argumentative. The same is true of the question, "Which is right?" It is not "proper to so frame the cross-examining questions that they are argumentative, or call for a conclusion, or assume facts." State v. Carroll, Mo.Sup., 188 S.W.2d 22, loc. cit. 24.
Moreover, the scope and extent of cross-examination is discretionary with the trial court and its ruling in this respect will not be disturbed unless an abuse of discretion is clearly shown. Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621; Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598; Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675. There is no showing of abuse of discretion by the trial court in his rulings in the above cross-examination. This is especially true since in each instance the questions were argumentative.
Appellants attempt to show that respondent made inconsistent statements in her deposition from her testimony at this trial. There was no objection to this line of cross-examination and no ruling was made by the trial court. Therefore, there is nothing before us for review.
Appellants contend that the instructions given by the trial court on behalf of respondent are erroneous. We do not believe these instructions are before us because the transcript of the record fails to show that any objections were made to the giving of these instructions. Holdman v. Thompson, 358 Mo. 577, 216 S.W.2d 72.
The correctness of the transcript is certified to this court in the following manner: "We hereby consent that the foregoing is a true and correct Transcript on Appeal saved on behalf of defendants, subject to the ruling of the Supreme Court upon defendants' Suggestions that it fails to show that defendants objected to the giving of all of plaintiff's instructions, and that plaintiff objected to the giving of all of defendants' instructions as set forth in defendants' Suggestions to Correct Omissions in the Transcript on Appeal which Suggestions will be duly filed in the Supreme Court, and agree that the same may be signed, filed and made a part of the record in this cause."
Section 512.110, RSMo, 1949, provides, "If the parties agree that the transcript correctly includes all of the record, proceedings and evidence, it need not be approved by the trial court. * * * If there is any dispute concerning the correctness of any transcript, or any part thereof, or if the parties fail to agree within a reasonable time as to its correctness, the transcript shall be settled and approved by the trial court."
There was no showing that any effort was made to get the trial court to approve the transcript. However, the appellants filed in this court "Suggestion That Transcript On Appeal Be Corrected To Include Objections To Instructions Omitted From The Transcript By Error, Accident, Or Inadvertence." Section 512.110, supra, also provides: "If anything material to either party is omitted from the transcript by error or accident or is inadvertently misstated therein, the parties by stipulation, or the trial court, before the transcript is filed in the appellate court, or the appellate court thereafter, on a proper suggestion or of its own initiative, shall direct that the omission or misstatement shall be corrected and any such correction in the appellate court shall be certified by its clerk to the trial court. The appellate court may, if it seems necessary, order that a supplemental transcript on appeal shall be prepared and filed by either party or by the clerk of the trial court including any additional part of the record, proceedings and evidence, or the clerk may be directed to send up any original documents or exhibits." *57 Before the trial court ruled on appellants' motion for a new trial, appellants' attorney learned that the court reporter's notes did not show any objections to the giving of respondent's instructions. At the time the motion for a new trial was ruled, the court took up appellants' request that "the reporter be instructed to show in her official notes the objections to instructions which were made by me as attorney for the defendants and which were made by Mr. Barnett as attorney for plaintiff." After hearing evidence, which included letters exchanged by counsel on both sides with the reporter and the trial judge and oral statements of both attorneys, the trial judge, in ruling on this motion, stated, among other things, "But I am convinced that no objections to any instructions were presented by the attorneys for either side."
This is not an instance where there was an omission "from the transcript by error or accident or (is) inadvertently misstated therein," but is an instance where there is a dispute as to the correctness of the transcript. Yet, appellants did not make an effort to get the trial court to settle and approve the transcript after it was prepared by the reporter. In view of what had previously transpired, the appellants probably concluded it would be useless to try to get the trial court to take their view as to what transpired when the instructions were given.
Under these conditions, the instructions are not before us for review.
Appellants also contend that the verdict was the result of sympathy, bias and prejudice which resulted from several events which occurred during the trial. First were remarks made by the trial court during the trial. During the impaneling of the jury one venireman testified that he had had several law suits which resulted from personal injuries he had received and that these suits were settled out of court, but that he did not believe that he had gotten "a square deal."
The appellants moved that this juror be removed for cause. Then the trial court asked him the following questions:
"The Court: Well, I am going to ask you, just like I did the other gentleman, if you are sworn as a juror to try the case, will you remove from your mind all of your personal experiences and try this case solely upon the testimony that the witnesses give to you, and under the law that the Court gives you?
"Venireman Black: Yes, sir.
"The Court: No doubt about that?
"Venireman Black: No."
Then Mr. Black testified that what he meant was "the lawyer sold me out."
Now follow other remarks made by the trial court that appellants contend caused the jury to be biased and prejudiced.
We will put in italics that part of the trial court's statements which appellants contend caused the jury to be prejudiced in favor of respondent.
"The Court: We are not trying the lawyers in this case. The lawyers aren't going to have a thing to do with it; they are just the hired hands."
Again:
"The Court: Your chief complaint is against the lawyers, then, notI don't know but you are right. I will overrule the objection. I think he is qualified to serve."
"The Court: Now, talk louder; they are a pretty good looking bunch of men. Look at the jury. They can't hear you."
After Dr. Pipkin had finished testifying the trial court said, "Come see us again sometime, Doctor."
When the appellants' attorney was cross-examining the respondent, he asked if the trial court objected to his placing a chair and a table so the jury could see their position. He stated: I don't care what you do, just so you do something."
An attorney for respondent stated, "We have a lady here, Mrs. Miller. Her hours are such that she works at night and tries to sleep in the daytime. We kept her on tap all day yesterday
"The Court: You think that we can put her to sleep?" *58 When counsel for respondent offered to show the petticoat worn by respondent when she was injured if the jury and court were interested, the court remarked, "The jury may be, but the Court isn't."
"In a jury trial the court should be extremely careful to refrain from any word or act indicating a preference for, or distrust of, any litigant." Maryland Casualty Co. v. Spitcaufsky, 352 Mo. 547, 178 S.W. 2d 368, loc. cit. 372. See, also Wair v. American Car & Foundry Co., Mo.App., 285 S.W. 155.
None of the remarks made by the trial court could be construed as showing preference to either party to this litigation. Evidently appellants did not think so as they made no objections at the time these remarks were made by the trial court.
Another act which appellants contend was prejudicial was the closing argument of respondent's counsel, which was as follows:
"Mr. Barnett: Now, where is the chair? Why can't we have the chair? Why can't we have some pictures?
"Mr. Linde: I think that is unfair argument; he is inferring that somebody has whisked the chair away.
"Mr. Barnett: Definitely I am inferring that.
"Mr. Linde: I object to that as unfair argument, if the Court please.
"The Court: Overruled."
We think the record justified the statement of respondent's attorney. It shows that Charles C. Baird had been maintenance man and engineer at the hotel where respondent was injured, and that the elder Mr. Borris, one of the appellants, instructed him to burn the chair.
We rule that this assignment of error is without merit.
Appellants' last assignment of error is that the damages awarded the respondent are excessive. The respondent was injured on July 12, 1946, and she was then 69 years old.
The most serious of the injuries suffered by respondent as a result of her fall was a Colles fracture of her right wrist. The bones were not set perfectly but the wrist had a maximum recovery. The wrist now has a limited motion of 35 to 40 per cent. Her hand and grip are weak and the activity of her hand is limited. Her right wrist is one-half inch longer than her left wrist and the left forearm is slightly larger in circumference than the right forearm. She testified that she can no longer work at her usual job of selling coats and dresses because she would have difficulty in taking coats off and on hangers but, however, that she had never applied for a job.
Respondent contends that she lost 269 weeks of work as a saleslady at $35 a week, or $8,900, on account of this injury. However, it had been considerable time before her injury that she had worked as a saleslady; in fact, she had not worked any place for eleven months prior to her injury except at a few odd times at the election commissioner's office. The last steady employment she had was at war plants. We think that considering her age and the fact that she had not worked as a saleslady for a considerable time, it is rather speculative that she could still continue as a saleslady.
It is a fair inference from the statements made by the trial judge that he did not exercise his discretion in weighing the question of excessiveness of the verdict. We think the facts in this case are somewhat similar to those in the case of Darlington v. Railway Exchange Bldg., Inc., 353 Mo. 569, 183 S.W.2d 101, where we reduced a verdict to $8,000. However, as we stated in the case of Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674, loc. cit. 682, "We must give more than lip service to the diminishing purchasing power of our dollar."
Considering all of these factors, we think the verdict should be reduced to $10,000. If respondent will enter a voluntary remittitur of $2,500 within fifteen days, the judgment will stand affirmed for $10,000 as of the date of its original entry; otherwise, the judgment is reversed and the cause remanded.
All concur.