MARYLAND CASUALTY COMPANY, a Corporation, v. HYMAN SPITCAUFSKY and JOHN SPITCAUFSKY, Appellants.—Nos. 38616 and 38617.—178 S. W. (2d) 368.

Division One, February 7, 1944.

Rehearing Denied, March 6, 1944.

*James P. Aylward, Ralph M. Russell* and *Francis M. Cook* for appellant John Spitcaufsky.

*Gage, Hillix, Shrader, Hodges, Cowherd & Phelps* for appellant
Hyman Spitcaufsky.

*Warrick, Koontz, Hazard & Shannon* for respondent.

CLARK, P. J.—From a judgment in favor of respondent, plaintiff, for $8,355.61 against both defendants, each defendant has taken a separate appeal and has filed a separate brief. There is little substantial difference in the legal questions presented in appellants' briefs and the two appeals will be disposed of in one opinion.

The original petition filed April 22, 1931, among other allegations, stated that defendants, doing business under the name of Spitcaufsky Brothers, were engaged in a business including the operation of a rock quarry requiring the blasting of rock and other material. That under the charter and ordinances of Kansas City it was necessary, before blasting operations could be conducted in the city limits, to procure a permit from and file a bond with the city conditioned that applicant would carefully use explosives and pay damages suffered by any person by reason of such blasting operations. That on or about February 24, 1926, defendants made application to plaintiff and procured a blasting bond signed by defendants as principals and plaintiff as surety and procured the necessary permit from the city. That on December 27, 1926, defendants, by the use of material used in blasting, injured one McMullin, a minor. That the minor by his next friend sued defendant, John Spitcaufsky, and obtained a judgment for $10,000.00 and then sued plaintiff on the bond. That the parents of the minor also sued John Spitcaufsky and plaintiff for $10,000.00 damages for loss of the minor's services. That liability was unquestioned and plaintiff and another company, which carried liability insurance for the Spitcaufskys, made a settlement of all claims, which required plaintiff to pay the sum of $5,304.93. That to induce plaintiff to execute the blasting bond and as a part of the consideration therefor defendants executed a written agreement to indemnify plaintiff for all payments which it might be required to make under the terms of the bond. Plaintiff asked judgment for the amount it had paid with six per cent interest from the date of payment, July 17, 1929.

Defendants filed separate answers. Both answers contained general denials and set up other matters in defense which, so far as preserved in the briefs, will be hereafter discussed.

For some reason not disclosed by the record, although the case was filed April 22, 1931, it was not tried in the circuit court until October 12, 1942. The trial was to a jury resulting in a verdict and judgment for the plaintiff as heretofore stated.

While the briefs of the two appellants differ in some particulars the following summary includes the substance of all points made by each of them, to wit:

That the court erred in refusing to sustain defendants' demurrer to the evidence; in permitting plaintiff to amend its petition after the evidence was in; in giving certain instructions for plaintiff and refusing certain others for defendants; in making prejudicial remarks in the presence of the jury.

*Demurrer to the evidence.* The evidence shows that appellants are brothers. Each had been engaged as a contractor for many years. They were not partners, did not do business together and did not contemplate doing business together. John Spitcaufsky testified that he and his brother did not speak to each other for seven or eight years after 1924. In order to qualify for blasting it was necessary to obtain a permit from the city and to obtain such a permit it was necessary to file a blasting bond. A bond for $5,000.00 would qualify a contractor for one job at a given location and a $10,000.00 bond would authorize blasting at any and all locations within the city. There is no evidence that either brother procured an individual blasting bond and the bond for $10,000.00 upon which respondent was surety was the only blasting bond shown by the evidence to have been filed by either of them. Shortly after this bond was filed with the city, John Spitcaufsky procured a sewer contract and a blasting permit was issued in the name of "Hyman and John Spitcaufsky doing business as Spitcaufsky Brothers." Later the McMullin boy was injured and, by his next friend, recovered a judgment against John Spitcaufsky for $10,000.00 and sued him and respondent for the same amount on the blasting bond. Still later the parents of the McMullin boy sued John Spitcaufsky for the loss of their son's services. On July 17, 1929, respondent made a full settlement by paying the McMullins $4,500.00 and paying an additional sum for court costs and attorney fees. (The total amount paid in settlement was greater than here indicated, a part of the total being paid by the company which carried the liability insurance.) The application made to respondent for the blasting bond was signed by John Spitcaufsky and Hyman Spitcaufsky. It bound them jointly and severally to indemnify respondent for all damages, loss, costs, charges and expenses, including attorney fees which respondent should be required to pay on account of executing a blasting bond and all disbursements which respondent

should make in good faith under the belief that it was liable, or that respondent deemed necessary or expedient to make, whether such liability, necessity or expedience existed or not. The blasting bond purported to be executed by "Hyman and John Spitcaufsky, doing business as Spitcaufsky Bros.," and was signed "Spitcaufsky Bros. by Hyman Spitcaufsky" with respondent as surety.

Appellants argue that, as the blasting bond was signed by "Spitcaufsky Bros." and recited that it was executed by "Hyman and John Spitcaufsky doing business as Spitcaufsky Bros." a presumption arises that it was intended to apply only to such operations as the appellants might engage in as partners. That, if it was a partnership bond, respondent was under no obligation to pay damages arising out of the individual operations of John Spitcaufsky and the payments made by respondent were voluntary.

This argument has some merit if, in fact, the blasting bond is a partnership bond, but even the authorities cited by appellants show that no conclusive, or even strong, presumption of partnership arises by the use of such term as "Spitcaufsky Bros." or "doing business as Spitcaufsky Bros." [47 C. J., Sec. 119, Partnership.] Appellants concede that such a presumption is only a prima facie one and one of the appellants further says that the question depends upon the intention of the parties as gathered from the entire instrument and the surrounding circumstances.

Nowhere in the petition, the indemnity agreement, the blasting permit, or the blasting bond were the appellants described as partners. There is no room in this case for any presumption that the blasting bond was intended to cover the operations of a partnership, for appellants strenuously insist that they were never partners and there is no evidence that they intended to become partners or to engage in any joint business enterprise. If the blasting bond did not cover the individual operations of the appellants it did not cover anything, and the city issued a blasting permit to John Spitcaufsky on the faith of a meaningless bond. The indemnity agreement, upon which the instant suit is based, contains no language indicative of a partnership. It is signed by each of the appellants individually, and binds them jointly and severally. We think the evidence clearly shows that the parties intended the blasting bond to cover the separate and individual business operations of the appellants. ]

Appellants argue that respondent did not act in good faith in settling with the parents of the McMullin boy before they had made claim against respondent, and before they had obtained judgment against appellant, John Spitcaufsky. There is no merit in such contention. When respondent settled the claims, the minor had already obtained a judgment against John Spitcaufsky and had sued him and respondent on the blasting bond. On the same allegations contained in the minor's suit, the parents had sued John Spitcaufsky.

There was no evidence of a request by either appellant that these claims be further litigated. The respondent was under no necessity to require its liability to be fixed by final judgment. The indemnity agreement authorized respondent to make settlement if it deemed itself liable, whether or not such liability in fact existed, and authorized it to make settlement without even notifying appellants. It made the settlement on the advice of its attorneys.

We hold that the demurrers to the evidence were properly overruled.

■ *Amending the petition.* After the evidence was in, the respondent, over the objection of appellants, was permitted to amend its petition by striking out the allegation "that defendants doing business under the name of Spitcaufsky Brothers were engaged in the operation of a business including a rock quarry" and by making that part of the petition read, "the defendants were engaged or contemplated engaging in business requiring the blasting of rock or other material, including sewer construction." Similar changes were made in other parts of the petition. The amount sued for was reduced and some other changes, not objected to, were made by the amendment. Appellants say that this amendment constitutes a departure by changing the cause of action from a suit against a partnership to a suit against individuals. We have already answered this contention, in part, in discussing the demurrers to the evidence. The original petition did not allege that appellants were partners nor seek to subject them to liability as partners. Both the original petition and the amended petition were based on the same cause of action, to wit, the indemnity agreement. In both it was alleged that the indemnity agreement was executed by both appellants, not as a partnership; that respondent was induced to execute the blasting bond by reason of the indemnity agreement and was required to pay damages by reason of the operations of one of the appellants. The original petition, read in its entirety, cannot be said to be a suit against a partnership, notwithstanding the descriptive term "doing business as Spitcaufsky Brothers." The principal change effected by the amendment was the allegation that the contract out of which blasting was to be done was John's contract rather than the contract of both appellants. This change was in conformity with the proof and did not change the cause of action. Hyman's liability was not dependent on his being interested in the contract with John. The liability on the indemnity agreement was joint and several, and if it did not cover the individual operations of both appellants it covered nothing. Much of the evidence which gave rise to the amendment was offered by the appellants.

We hold that the amendment was within the sound discretion of the court. [Revised Statutes Missouri 1939, Section 971; Dyer v. Harper, 336 Mo. 52, 77 S. W. (2d) 106, 109; Solomon v. Moberly Light and Power Co., 303 Mo. 622, 262 S. W. 367, 370; Loughlin v. Marr-Bridger Co. (Mo. App.), 10 S. W. (2d) 75, 77; Walk v. St. Louis

Can Co. (Mo. App.), 28 S. W. (2d) 391, 394; Lilly v. Tobbein, 103 Mo. 477, l. c. 490, 15 S. W. 618.]

*Instructions.* Appellants' instruction C said that if the jury found that the indemnity agreement provided that Spitcaufsky Brothers, a copartnership, indemnified plaintiff etc., their verdict must be for defendants. As we have already said the indemnity agreement was signed by both the appellants individually, said nothing about a partnership, did not use the term "Spitcaufsky Brothers," and contained no language indicative of a partnership.

Instruction G would have told the jury that if they found defendants were not partners and not engaged in a joint operation neither would be liable for the act of the other in making application for a blasting bond, etc.

Instructions E and F said that if plaintiff settled the claims before its liability had become fixed, or knowing facts which would establish no liability, the verdict must be for defendants.

Instruction H was based on the erroneous assumption that the blasting bond covered damages caused by the actual use of explosives only and not by keeping them for use.

All these instructions were properly refused. They were not based upon the evidence and did not correctly declare the law as applied to the evidence.

Respondent's instruction number one is a long one, telling the jury that if they should find the facts substantially as we have heretofore set them out they should render a verdict for the plaintiff. Appellants' objections to the instruction begin with the erroneous claim that the indemnity agreement was executed by appellants "doing business as Spitcaufsky Brothers." Other objections are similar to the argument appellants make in support of their demurrer to the evidence, and which we have already discussed, to wit, that the blasting bond was a partnership bond, and that the payments made by respondent were voluntary because no claim had been directly made to respondents by the parents of the injured minor.

Another objection made by appellants is that, although the instruction required the jury to find that the claims were paid in good faith, it failed to define "good faith." There may be cases in which it is necessary to define that term, but this case is not one of them. If such definition was desirable, it was supplied by instruction K given at the request of appellants, which instruction also recognizes that respondent had the right to pay anticipated claims as well as claims directly made. In substance, instruction K told the jury: that if respondent paid the claims without the existence of facts which would convince it that the amount paid constituted a reasonable settlement of any claim made against respondent, or any possible claim which respondent might or could have anticipated, and without the existence of facts which would convince it that the settlement

could be made in good faith, upon such facts, then the verdict should be for the defendants.

Appellants make the further objection to respondent's instruction number one that it authorized the jury to allow interest from the date of the payments made by respondent instead of from the institution of the suit against appellants. Section 3226, Revised Statutes Missouri 1939, [Mo. R. S. A., vol. 10, p. 373] provides that creditors shall be allowed interest at six per cent for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand is made. Under their written agreement appellants' obligation to indemnify respondent became due at the time respondent settled the claims, and under the statute their obligation drew interest from that date without demand. We are not authorized to amend the statute by judicial legislation.

*Alleged prejudicial comment by the trial judge.* While respondent was examining a witness with the purpose of proving the signatures of appellants, the record shows the following:

"The Court. (Addressing the witness on the stand) Step down please. In a court proceeding, there should be absolute frankness. Mr. John Spitcaufsky take the stand.

(Mr. Spitcaufsky here does so.)

The Court: You were sworn this morning?

Mr. Spitcaufsky: Yes sir.

The Court: Take the stand up there.''

Appellants' attorney objected to the placing of the witness on the stand by the court on its own motion; also to the remark of the court that frankness is necessary in a lawsuit, "in such tone and demeanor as to be prejudicial to the rights of the defendants, before this jury."

The first part of the objection, relating to the court on its own motion requiring the witness to take the stand, is devoid of merit. Whether the remark of the trial judge, that frankness is necessary, constitutes reversible error depends upon the circumstances. Of course, the record does not disclose to us the "tone and demeanor" of the judge. It is a fair inference that the judge believed the appellants lacking in frankness. In a jury trial the court should be extremely careful to refrain from any word or act indicating a preference for, or distrust of, any litigant. However, in this case the remark of the judge was made under extreme provocation. Both appellants strenuously resisted all efforts of respondent to prove their signatures to the indemnity agreement. At the time the remark in question was made by the judge, respondent had a witness on the stand to identify, for the purpose of comparison, the signatures of appellants to their application for registration which the law required them to sign in order to qualify them as voters, and they had objected to the identification of such signatures. At first John flatly denied his signature to the indemnity agreement. Later he gave evasive and argumentative

answers. Hyman had denied his signature in a deposition before the trial. At the trial he admitted the signature, but later gave evasive answers in an apparent attempt to put the matter in doubt. On abundant proof the jury found that the agreement was signed by both appellants, and the brief filed on behalf of Hyman in this court states that it was so signed. From the record, we are forced to conclude · that it is much more likely the jury was prejudiced by the acts and conduct of appellants rather than by the remark of the trial judge. At least the appellants are not in a position to complain of the judge's comment on their lack of frankness.

Finding no reversible error, the judgment is affirmed. All concur.