Marion C. BULLOCK, Plaintiff-Respondent,

v.

Herman M. SKLAR and Mildred Sklar, d/b/a Goodman Furniture and Hardware Company, Defendants-Appellants.

No. 30711.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

Rehearing Denied Oct. 17, 1961.

J. C. Jaeckel, St. Louis, R. S. Roberts, Sr., and J. R. Roberts, Farmington, for defendants-appellants.

Dearing, Richeson & Weier, Will B. Dearing, Hillsboro, for plaintiff-respondent.

DOERNER, Commissioner.

This is an action by the plaintiff to recover damages for personal injuries alleged to have been sustained by him while a customer in a store operated by defendants in Bonne Terre, Missouri. The trial, before the court and a jury, resulted in a verdict and judgment in favor of plaintiff for the sum of $15,000, from which defendants have appealed.

Defendants' initial point relied on, containing various subdivisions, is that the evidence was not sufficient to make a submissible case, and that their motion for a directed verdict, or their after-trial motion for judgment, should have been sustained. This requires a review of the evidence, in the light most favorable to the plaintiff. The store operated by the defendants occupied the first floor of a building extending north and south, with the front facing south. At the rear of the store a stairway led to a balcony which extended crosswise of the building, from east to west. A steel beam 7 inches wide, which supported the

upper portion of the building, ran the length of the store, the bottom being 5 feet 7 inches above the floor of the balcony.

Plaintiff was 74 years of age at the time of the trial, and was 5 feet 9½ inches in height. He had retired from his former employment with St. Joseph Lead Company some 16 years before trial, because of a heart attack. The sight was lost in his right eye, except for the ability to perceive a bright light held close to the eye. Plaintiff testified that he could see to get around with the left eye, aided with glasses, but that he had to look down to see where he was walking. The testimony of Mrs. Nadine Zimmerman, plaintiff's daughter, was that plaintiff habitually walked in a stooped position to see where he was going. On the morning of February 16, 1959, plaintiff and his wife, accompanied by their daughter, Mrs. Zimmerman, went to defendants' store to purchase furnishings for their house. They were waited on by defendant Herman Sklar. After certain purchases had been made on the main floor plaintiff expressed a desire to buy a bed spring and mattress, and was told by the defendant that those articles were on display on the balcony.

Mrs. Zimmerman was the first to ascend to the balcony, and spent a few moments there before the others arrived. Sklar led the way, up the stairs, and across to the west wall, where the mattresses were displayed, followed by plaintiff, and then his wife. They were joined there by Mrs. Zimmerman. Plaintiff selected a mattress and a bed spring. Mrs. Zimmerman returned to the main floor before the rest of the party. Their return trip was along the same route taken on the way to the mattresses, with Mrs. Bullock in the lead, followed by Sklar, and with plaintiff bringing up the rear. Plaintiff testified that he was watching Sklar's feet, when Sklar turned or wheeled around and threw up his hands; that he straightened up to see what Sklar was motioning at; and that as he did so he hit his head on something, sank to his knees, and somebody grabbed him. The next thing he remembered was downstairs when Mrs. Bullock was paying Sklar. Mrs. Bullock and Sklar confirmed plaintiff's testimony that Sklar had motioned with his hands, that plaintiff had straightened up, and that plaintiff had hit the beam with his head. Sklar's explanation of the movement of his hands was that he had gestured with them in talking.

Plaintiff, his wife, and their daughter all testified that they had not seen the beam, and did not know it was there. Sklar testified that he knew that a person walking under the beam could strike it. He stated that he had to "duck" to go under it, and that on occasions he had bumped his own head on the beam. He conceded that he knew that on the return trip from inspecting the mattress the plaintiff would have to pass under the beam, and admitted that he never at any time warned the plaintiff of the presence of the beam. He admitted, further, that there were no signs warning customers of the presence of the beam.

There was a sharp conflict in the evidence as to the amount of light which prevailed on the balcony. Mrs. Zimmerman testified that when she first ascended she did not see any lights burning, and that it was "dim"; and that while there was sufficient natural light that she could see merchandise that was displayed, it was not light enough for her to "inspect" it. Neither plaintiff nor his wife saw any lights on the balcony. Plaintiff said that there was enough light so that he could see the floor, but not sufficient for him to see the merchandise. At the time a selection of the mattress was being made, according to Mrs. Zimmerman, she remarked that one was a cheaper grade than another, whereupon Sklar said "No," reached up and turned on a light, and stated that the second was the higher priced mattress and the first was the cheaper grade. At the trial Sklar testified on direct examination that when he reached the balcony he turned on two fluorescent lights, one of which was only a few feet from the mattresses, and one a conventional or incandescent light.

He also said that lights always burned on the first floor, and that the rear fixtures for such lights were only a few feet from the balcony. However, on cross-examination he admitted that when his deposition had been taken, prior to the trial, he had testified that he didn't recall how many strings he pulled to turn on the lights; that it was customary for him to turn the lights on when he took people up to the balcony, and that he thought he followed that procedure on the day plaintiff was there; but that there was no way to explain the difference in his testimony between that given when his deposition was taken, and that at the trial.

■ It is well settled that the basis of the defendant's liability in a case of this nature is his superior knowledge of the defective condition of his premises which results in the injury to plaintiff. Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Howard v. Johnoff Restaurant Company, Mo., 312 S.W.2d 55; Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278. If a defendant knowingly permits a condition to exist which involves an unreasonable risk of harm to the plaintiff, of which the plaintiff, in the exercise of ordinary care, does not or should not know, a recovery against him will be permitted. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 74 A.L.R. 2d 938. While if the danger is obvious, or as well known to the plaintiff as to the defendant, actionable negligence is not established, and the plaintiff will not be permitted to recover. Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623; Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369; Schmoll v. National Shirt Shops of Missouri, 354 Mo. 1164, 193 S.W.2d 605; Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468. Defendants do not contend that the presence of the beam above the balcony at a height of 5 feet, 6 inches did not create a hazardous condition. Nor do they deny that they were aware of the likelihood of a person striking the beam. The arguments made in support of their contention are, first, that the plaintiff did not prove the allegations upon which he predicated his right to recover; and second, that under the circumstances of this case they were under no duty to warn plaintiff of the presence of the beam.

■ Defendants' point to an allegation in plaintiff's petition that defendants were under a duty to warn plaintiff of the presence of the beam because they were aware of the impairment of plaintiff's eyesight, which obliged plaintiff to walk in a stooped position. They maintain that there was no evidence tending to show that Sklar was aware of plaintiff's impaired vision, and that the court should therefore have directed a verdict in their favor. Considering plaintiff's petition as a whole, plaintiff's charge of negligence was the hazardous condition created by the beam, and defendants' failure to warn him thereof. The allegations as to his physical disability and the manner in which he walked were unnecessary, and though pleaded it was not essential to plaintiff's right to recover that he prove them. Ferguson v. Union Electric Co. of Missouri, Mo., 282 S.W.2d 505; Hathaway v. Evans, Mo.App., 235 S.W.2d 407.

■ The gist of defendants' second contention that under the circumstances of this case defendants were under no duty to warn is that the beam was open and obvious, and that its presence should have been known to plaintiff. In support of their argument defendants cite numerous cases from this and other states holding that it is not negligence to fail to warn when the circumstances do not indicate the necessity therefor. Not all of the decisions cited deal with the relationship of proprietor and invitee. Of those which do, most involve floors or steps alleged to have been in a dangerous or defective condition, as in Howard v. Johnoff Restaurant Company, supra. Two, however, deal with overhead obstructions, Myles v. Helena Motors, Inc., 113 Mont. 92, 121 P.2d 548; Losie v. Frisk, 243 App. Div. 825, 278 N.Y.S. 25, involving automobile hoists or lifts in both cases. In all

of the cases cited by defendants, including the latter two, there was an abundance of light by which the dangerous condition was readily discoverable. That was not the situation in the instant case, and the insufficiency of the illumination is the factor which distinguishes it from the cases relied upon by defendants. It was not the existence of the beam alone which created the hazard, and made a warning necessary. It was the absence of sufficient light combined with the location of the beam. Dean v. Safeway Stores, Inc., Mo., 300 S.W.2d 431; Swanson v. Godwin, Mo., 327 S.W.2d 903; Oakley v. Richards, 275 Mo. 266, 204 S.W. 505, 506; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045; Cannon v. S. S. Kresge Co., 233 Mo.App. 173, 116 S.W.2d 559; McFarland v. Sears, Roebuck & Co., Mo.App. 91 S.W.2d 615; Feucht v. Parkview Amusement Co., Mo. App., 60 S.W.2d 663. Under the authority of those cases plaintiff made a prima facie case for the jury as to defendants' duty to warn plaintiff of the presence of the beam.

What has been said with regard to the issue of negligence likewise disposes of defendants' argument that plaintiff was guilty of contributory negligence as a matter of law. The same factors previously discussed required that that issue be submitted to and resolved by the jury. Dean v. Safeway Stores, Inc., supra.

The second point relied upon by defendants is that the court erred in overruling defendants' alternative motion for a new trial. The reasons given for this assignment of error fall into two principal categories: (1) that the Court erred in denying, on four occasions, defendants' motions for a mistrial; and (2), that the court erred in giving to the jury plaintiff's instruction No. 1. Taking up those divisions in the order named, defendants' first motion for a mistrial was made when plaintiff's counsel, on voir dire examination, asked the jury:

"Now, may I ask you, does any member of this panel or any member of

your family have any stock, financial interest, in the New Amsterdam Casualty Company, an insurance company, or does any member of your family work for that company, if so, raise your hand."

Defendants' counsel conceded that the New Amsterdam Casualty Company was defending the case. The foregoing was the only question asked on the subject, and there was no effort made to emphasize the interest of that company in the lawsuit. No contention is made that plaintiff did not have the right to ask a question of that general nature. The only complaint is the inclusion of the descriptive phrase "an insurance company," after the corporate name "Maryland Casualty Co.," injected the element of insurance into the trial, to the prejudice of defendants. We cannot agree with plaintiff's argument that it was entirely proper to employ the descriptive phrase, and do not condone its use. On the other hand, we are not convinced that its addition after the corporate name of the company so prejudiced the defendants that it thereby deprived them of a fair trial, as they contend. As was said in Haley v. Edwards, Mo., 276 S.W.2d 153, 160:

"* * * Whether a mistrial should be declared under such circumstances rests largely within the discretion of the trial court. The court's ruling is to be interfered with only in the event of abuse of that discretion. We find no such abuse here. Schraedel v. St. Louis Public Service Co., Mo.App., 248 S.W.2d 25."

The remaining three incidents for which defendants moved for a mistrial receive but the briefest attention in their brief. By agreement of counsel, when plaintiff testified he was permitted to sit in a chair at floor level, to which he was assisted by his wife, rather than in the regular witness chair, because of his physical condition. Plaintiff's counsel asked plaintiff's wife whether she wanted to sit beside him, whereupon defendants' counsel moved

for a mistrial. The court overruled the motion, but directed that Mrs. Bullock sit behind plaintiff's counsel. We fail to see any error or abuse of discretion. The next incident involved a question put to Dr. Mullen, one of plaintiff's witnesses, as to whether he "ever found anything about this Old Man to cause you to believe he's not honest and truthful?" after an objection had been made to a question which, according to defendants' interpretation of it, called upon the witness to pass upon the credibility of plaintiff. Counsel for defendants objected, and also moved for a mistrial. The court sustained the objection to the question, but denied the request for a mistrial. Anderson v. Life & Casualty Ins. Co. of Tenn., Mo.App., 123 S.W.2d 207, is cited by the defendants as authority for their contention that the inquiry was highly improper and prejudicial, and that the trial court should have declared a mistrial. That decision holds that one witness cannot be interrogated as to the truth or falsity of what another person has stated, and that an objection to such a question was properly sustained. The trial court did so in the instant case. The case does not hold that the mere propounding of such a question is so prejudicial as to be grounds for a mistrial, and, absent special circumstances, we are of the opinion that it is not. The last incident occurred during plaintiff's cross-examination of defendant Sklar. Counsel for plaintiff was taxing the defendant Sklar with the fact that in his deposition he had testified that he didn't recall how many strings he had pulled to turn on the lights when he first ascended to the balcony, whereas at the trial, on direct examination, he had testified that he pulled on all the lights. Sklar professed to understand the question as to how many strings were on the balcony. Counsel replied that that was not his question, and inquired whether the witness had a license to practice law. Sklar answered "Absolutely." Counsel rejoined, "All right. So let's not kid each other here. We're not talking about how many strings —." At that point counsel for defendants

objected to counsel for plaintiff arguing with the witness. Counsel for plaintiff withdrew the question. Counsel for defendant renewed his objection to counsel for plaintiff arguing with the witness. Counsel for plaintiff agreed that he should not do so. At that point the court remarked:

"Now, now, wait a minute. The Court has known Mr. Sklar for several years and knows he is a member of the Bar and there is expected a greater cooperation with counsel from a lawyer on a witness stand than laymen. So, the objection is overruled and let's proceed."

Counsel for plaintiff then renewed his interrogation of the witness, and after five or six additional questions had been asked, and answered, counsel for defendant then moved for a mistrial on the grounds that the court's comment cast a question on the veracity and fairness of the witness in answering questions, and the court denied the request. The court's remark, as is evident, did not question the credibility of Sklar's testimony. At the most it was merely an observation that a witness who was a lawyer should not quibble, and should answer the question propounded. A review of the transcript discloses that the foregoing was not the sole instance during his cross-examination in which the witness exhibited a tendency to temporize or give inapposite answers. While in a jury case the court should be extremely careful in comments of that nature which may prejudice a party, as in Harms v. Simkin, Mo. App., 322 S.W.2d 930, the court must, of necessity, likewise be allowed some latitude in the conduct of a trial, including that of requiring a witness to answer questions properly propounded to him. Under the circumstances of this case we believe that the trial court did not exceed the bounds of judicial propriety or so prejudice the defendants that they did not have a fair trial. Maryland Casualty Co. v. Spitcaufsky, 352 Mo. 547, 178 S.W.2d 368.

As previously stated, the second part of defendants' point that it is entitled to a new trial consists of an attack upon plaintiff's verdict directing instruction No. 1. The instruction is lengthy, and in the light of the criticism leveled at it by defendants it will not be necessary to quote it in toto. In brief, after requiring the jury to find that plaintiff was defendants' invitee, the instruction required the jury to find the presence of the beam, at the height stated, created a dangerous condition to a patron of defendants' store, that in leaving the balcony plaintiff followed defendant Sklar, who stopped before reaching the stairway, that defendant straightened up and struck his head on the beam, that plaintiff did not know or by the exercise of ordinary care would not have discovered the presence of the beam, that defendants failed to warn plaintiff of its presence, and in so failing, were negligent, and that as a result of such negligence the plaintiff was injured. Defendants claim that two indispensable elements were omitted from the instruction. It is first claimed that the instruction did not hypothesize the facts upon which plaintiff predicated his right to recover, namely, knowledge on the part of defendant Sklar that plaintiff's vision was impaired, that plaintiff was obliged to walk in a stooped position, and that therefore a warning was necessary. We have already ruled that such allegations in plaintiff's petition were unnecessary, and plaintiff was under no more of a duty to submit them in his instruction than he was to prove them. Hoffman v. Philip A. Rohan Boat, Boiler & Tank Co., Mo.App., 294 S.W. 758; Hall v. Thompson, Mo.App., 170 S.W.2d 934.

It is next claimed that the instruction, in addition to requiring the jury to find that plaintiff did not know of or by the exercise of ordinary care would not have discovered the presence of the beam, should have also required a finding that defendant Sklar knew a warning was necessary. But the jury was required to find that defendants failed to warn plaintiff of the presence of the beam, and that in so failing they were guilty of negligence. This was sufficient. The standard of conduct exacted by the law is an external and objective standard, that of the ordinarily careful and prudent person, and not the judgment of the individual actor, be it good or bad. Dixon v. General Grocery Company, Mo., 293 S.W. 2d 415; Knight v. Swift & Company, Mo., 338 S.W.2d 795.

Defendants' remaining contention is that the judgment of $15,000 is excessive. The evidence favorable to the plaintiff on that issue indicates that at the time of trial plaintiff was 74 years old. Some 16 years prior to the accident he had suffered a heart attack which forced him to give up his regular employment. Subsequently he suffered two additional attacks, but plaintiff testified that for five years prior to the accident he had had no trouble insofar as his cardiac condition was concerned, that he was able to go about by himself, and to indulge in his hobby of fishing. Plaintiff and his wife had made a trip to California, and had returned but a short time before the accident. Dr. Jack Mullen, plaintiff's family physician, stated that while plaintiff's heart condition was permanent and chronic, plaintiff was much less disabled than he had been some years prior to the accident.

Plaintiff's head struck the beam with such force that he sank to his knees, and was rendered unconscious. He regained consciousness on the main floor of the store, but it was two days later before his mental faculties were entirely clear. He suffered headaches and intense pain in his head, shoulders, and right arm. A week later Dr. Mullen was called to plaintiff's home, and found that movement of plaintiff's neck increased the pain and that stretching the neck brought relief. Narcotics were prescribed for the pain, and a collar was made by the doctor, which the plaintiff wore for a short time. When the pain persisted, Dr. Mullen hospitalized the plaintiff, and applied traction to the neck by means of a harness to which a weight was attached. Plaintiff remained in bed in the hospital, under traction, for two and one-half or

three months. When he was released therefrom a special Thomas collar was made for plaintiff, which he wore from sometime in May, 1959, to sometime in October of the same year. The pain has persisted, and it was plaintiff's testimony that since the accident he had never been entirely free from pain. When it becomes too severe plaintiff applies traction at home by means of a harness suspended in a doorway. Since the accident plaintiff has, on occasion, experienced momentary periods during which he has passed out and fallen; his wife must accompany him when he goes out, and he is no longer able to go fishing.

Dr. Mullen testified that x-rays he had had Dr. Eagleton take of plaintiff disclosed a narrowing of the spaces between the 4th, 5th, 6th, 7th and 8th cervical spaces. He stated that it was possible that the trauma resulted in the narrowing of the spaces, and that it was also possible that an intervertebral disc might be protruding and impinging on the nerve. However he did not state as a medical certainty, that a disc was protruding. It was his opinion that the fact that the application of traction relieved the pain definitely indicated that a nerve was impinged, by the squeezing of the bone, and that plaintiff would continue to have intermittent pain for the rest of his life. He thought an operation would be of questionable value. Dr. Mullen also found evidence of arthritic lipping in the lower cervical spine, common to elderly persons and not caused by the accident. It was his opinion that the arthritic condition could have been aggravated by the trauma to produce pain. Plaintiff had had an experience of unsteadiness or some loss of equilibrium in his presence, which he thought was a true condition.

Dr. Mark D. Eagleton, who took x-rays for Dr. Mullen, as well as others at the request of defendants' examining physician, Dr. Robert E. Funsch, testified that he believed the spurring in the plaintiff's intervertebral spaces had been aggravated by the trauma. He concurred with Dr. Mullen in the opinion that the fact that traction to plaintiff's neck eased the pain indicated that there was some pressure on a nerve, relieved by the traction.

 While there are various factors to be taken into account in the determination of whether a judgment is excessive, Donahoo v. Illinois Terminal Railroad Company, Mo., 300 S.W.2d 461, there is no precise method for determining the maximum award, and each case must be considered upon its own peculiar facts. Kiger v. Terminal R. R. Ass'n of St. Louis, Mo., 311 S.W.2d 5. Under the doctrine of uniformity we may consider judgments which have been allowed to stand, or have been reduced by remittitur, in cases of a similar nature but one of the difficulties with that practice is that two cases seldom, if ever, involve the same combination of facts. We have considered the cases cited by defendants and those cited by plaintiff, as well as others which our own research has located. Taking into account the factors required to be considered, we have come to the conclusion that the verdict was excessive, and that the maximum amount for which a judgment should be permitted to stand is $10,000. Loveless v. Locke Distributing Co., Mo., 313 S.W.2d 24; Kiger v. Terminal R. R. Ass'n of St. Louis, supra.

The Commissioner therefore recommends that if, within 15 days after the filing of this opinion, plaintiff will enter herein a remittitur of $5,000, the judgment should be affirmed in the sum of $10,000 as of the date of the original judgment; and that otherwise the judgment should be reversed and the cause remanded for a new trial on the issue of damages only.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, if within 15 days after this opinion is filed the plaintiff will enter herein a remittitur of $5,000, the judgment herein of the Circuit Court shall be affirmed in the sum of $10,000 as of the date of the

original judgment; otherwise, the judgment is reversed and the cause remanded for a new trial on the issue of damages only.

ANDERSON, P. J., WOLFE, J., and ADAMS, Special Judge, concur.