427 S.W.2d 439 (1968)
In the Matter of the ESTATE of Rosetta JEFFRIES, Deceased, Respondent.
Terry Lynn EVANS, by Gayle Guffey, Guardian, Petitioner-Respondent,
v.
Walter JEFFRIES, Respondent-Appellant.
No. 52844.
Supreme Court of Missouri, Division No. 1.
May 13, 1968.
*440 Hyman G. Stein, Charles Alan Seigel, St. Louis, for petitioner-respondent.
Flynn, Parker & Badaracco, St. Louis, for respondent-appellant.
HIGGINS, Commissioner.
Proceeding for the discovery of assets under Sections 473.340 to 473.353, V.A.M.S. Trial to the court without a jury resulted in a judgment against respondent-appellant for unlawfully withholding from the estate of Rosetta Jeffries, deceased, $81,788.18 with interest of $16,254.56, a total judgment of $98,042.74.
Rosetta B. Jeffries died intestate May 18, 1963, survived by her second husband, respondent-appellant, Walter Jeffries, and her granddaughter, petitioner-respondent, Terry Lynn Evans, daughter of Mrs. Jeffries' deceased son, Warren Evans.
Mr. Jeffries was appointed administrator of the estate of Rosetta Jeffries in the Probate Court of the City of St. Louis July 25, 1963. He filed inventory listing and valuing real estate known as 5032 Oleatha Avenue, $25,000; Certificate of Deposit, Jefferson-Gravois Bank, ARC 4264, April 28, 1961, payable to Rosetta Jeffries, $10,000; 1963 Ford Galaxie automobile titled to Rosetta B. Jeffries, $1,600.
Terry Lynn Evans, on May 1, 1964, filed affidavit in the probate court in the estate of Rosetta Jeffries, pursuant to Section 473.340, supra, stating that she had cause to believe that Walter Jeffries "has concealed or embezzled or is otherwise unlawfully withholding certain personal property of the decedent, * * * approximately $238,000.00, * * * and is in the possession *441 of said Walter Jefferies (sic) or under his control (and) should be delivered to the said estate of Rosetta Jefferies (sic), deceased." The affidavit prayed that Walter Jeffries be cited to appear before the probate court "and admit or deny the allegations * * * and to be examined under oath concerning the wrongful withholding of assets * * * and answer all interrogatories * * *." Section 473.343, supra.
The citation was issued by the probate court May 1, 1964, and on May 20, 1964, Walter Jeffries appeared and denied under oath the allegations of the affidavit. Issue for trial was made thereafter upon certain of petitioner's interrogatories and appellant's answers, which were made as of February 17, 1965. Section 473.350, supra; Carmody v. Carmody, 266 Mo. 556, 181 S.W. 1148, 1151 [3]; Allmon v. Allmon, Mo.App., 306 S.W.2d 651, 654 [1].
By Interrogatory One (a), Walter Jeffries was asked, "Do you have or did you ever have in your possession or under your control any assets, monies, or property at any time belonging to the deceased, Rossetta Jeffries?" Mr. Jeffries answered, "None, except as inventoried." By Interrogatory One he was asked, "What were your assets and the value of such assets on December 31, 1948?" His answer valued his assets on that date at $35,000 to $40,000, consisting of an account with balance unknown in Southwest Bank in his and his mother's names; savings accounts at Mercantile Trust Company, Tower Grove Bank, and Jefferson-Gravois Bank, balances unknown; and a 1947 Oldsmobile coupe. Interrogatory Two sought the income, inheritance and gifts, loans, sales of assets, and amounts expended for living expenses of Mr. Jeffries during the years 1949-1964, and his assets and their value, and his liabilities and their amounts, on December 31 of each of those years. He answered that after his marriage to Rosetta, "everything that we had was placed in accounts in our joint names"; amounts of his income and sales of assets were unknown, as were his amounts expended for living expenses, and his assets as of December 31 in each of the years mentioned, except for real estate consisting of "Ranch Type five room home on five plus acres at Festus, Missouri; purchased in 1953 for $10,500.00; property placed in joint names," and a 1952 Ford truck, cost unknown, and a Ford Galaxie received from and "described in my late wife's estate for approximate value of $1,600.00." Interrogatory Three asked for the amount and source of money he had on deposit in Southwest Bank to which he stated the amount to be unknown and the source as a "Joint account with my late wife since 1948." Interrogatory Four sought and obtained the same answers as to deposits he had in Jefferson-Gravois Bank. Interrogatories Five, Six and Seven asked if he had any deposits in the Festus Bank, Tower Grove Bank, and Manchester Bank and, if any, their source. He answered "No" and that the source was "not applicable." Interrogatory Eleven asked: "List all assets, if any, which you claim were owned by Rosetta Jeffries and yourself either jointly, as tenants by the entirety, or as tenants in common, at the time of the death of said Rosetta Jeffries and in connection therewith state the following:
"1. State in detail the manner and circumstances in which said assets became so held by you and Rosetta Jeffries, including, but not limited thereto, the date which said property was first held by you and Rosetta Jeffries.
"2. State from whom said property was transferred to you and Rosetta Jeffries.
"3. Were any gift tax returns filed in connection with any such transfers, and if so, state the details thereof and attach a copy of the same hereto."
Answers:
"1. I owned, together with my late wife, assets valued at approximately $35,000 to $40,000 from the time of our marriage; these assets consisted of bank accounts and real estate that have been referred to in *442 response to preceding interrogatories. All of these assets were held in joint names excepting the real estate at 5032 Oleatha, which is described in the Inventory of this estate.
"2. These properties were acquired through our joint assets.
"3. No."
Upon the issues thus framed, the probate court found against petitioner and dismissed the citation. Petitioner appealed to the circuit court where the matter was tried de novo by the court without a jury.
Hyman Stein first met Rosetta and her first husband, George Evans, in the early 1930's when he was their attorney and they, as a husband and wife partnership, owned and operated Evans Bedding Company near 11th or 12th and Russell in St. Louis, Missouri. Mrs. Evans, due to lack of education and knowledge of business, sewed and taught other employees; Mr. Evans attended to sales and business matters. Mr. Evans died in August 1945, but the business continued with their son, Warren, entering the business as a partner with his mother. In early 1949 Rosetta and Warren changed their business from a partnership to a corporation, George Evans Bedding Company. Each owned equal shares and they, together with Mr. Stein, were the board of directors. Immediately prior to incorporation of the George Evans Bedding Company, the value of Rosetta's interest in the partnership was $85,791.93, $25,000 of which was put in the corporation for which she received one half the corporate stock.
Warren Evans died in 1951 and his widow, Gayle, mother of petitioner Terry Lynn Evans, joined the business. Later in 1951, Rosetta and Gayle sold the business by sale of the corporate stock. Rosetta received $35,000 for her half of the stock, making her total realization from withdrawals and sale of her interest in the business begun by her and her husband $95,791.93. She deposited in the Southwest Bank a check of August 16, 1951, for $32,500 payable to herself.
Rosetta owned the property on Russell Avenue upon which the George Evans Bedding Company did business. Upon sale of that business to American Bedding Company, she leased the building and premises initially for $6,000 per year, receiving $33,000 during the term of the lease. She sold this property in two parcels for $40,000 in 1959 and $11,500 in 1962, a total of $51,500.
The property at 5032 Oleatha, inventoried in the estate at $25,000, was purchased by Rosetta for $15,000 after Mr. Evans died. She, and eventually Mr. Jeffries, lived there until her death, occupying the downstairs; Warren, Gayle, and Terry Lynn lived upstairs.
Sidney S. Cohen inventoried a safe deposit box belonging to Rosetta September 27, 1945. He listed cash, $3,500; United States Savings Bonds, Series "G," $10,000; U. S. Treasury Bonds due December 15, 1969, $10,000; and 4,500 shares of Detroit Michigan Stove stock which Rosetta sold in February, March, and April, 1946, for $47,937.52.
During all the time Mr. Stein had known Rosetta, she was always working; he did not remember her ever taking a vacation; she dressed very modestly.
In 1948 Rosetta married Walter Jeffries, whose income, according to Mr. Cohen, certified public accountant, "was entirely from a tavern which he operated, and the income * * * was very nominal, and probably a loss in one or two years. It was a very small operation." Mr. Cohen prepared income tax returns for Rosetta and Walter from 1948 until at least through 1951, during which time the bulk of income was from her rents and interest.
Evidence through bank officers and exhibits showed these accounts and real estate in the names of Walter and Rosetta Jeffries on May 18, 1963, the date of Rosetta's death:

*443
Certificates of Deposit:
Southwest Bank, "Rosetta or Walter R. Jeffries
as joint tenants with right of survivorship
and not as tenants in common" $10,000.00
Southwest Bank, "Rosetta or Walter R. Jeffries" 15,000.00 $25,000.00
 ----------
(Signature cards showed both names.)
Jefferson-Gravois Bank & Trust Co., "Walter
R. Jeffries or Rosetta Jeffries" 5,600.00
Jefferson-Gravois Bank & Trust Co., "Rosetta
Jeffries and/or Walter Jeffries" 7,900.00
Jefferson-Gravois Bank & Trust Co., "Walter
R. Jeffries or Rosetta Jeffries" 5,000.00 18,500.00
 ---------
(Signature cards showed both names and the
certificates were subject to withdrawal by
either party when due.)
Boatmen's Bank, "Mrs. Rosetta or Walter Jeffries"
(Signature card showed both names.
Either could draw the deposit at maturity.) 10,000.00
Tower Grove Bank and Trust Company, "Rosetta
Jeffries or Walter Jeffries" 10,000.00
Checking Accounts:
Jefferson-Gravois Bank & Trust Co., "Walter
R. or Rosetta Jeffries" (Signature card showed
both names. Either could draw on the account.) 17,468.55
Southwest Bank, "Walter R. or Rosetta Jeffries"
(Signature card showed "signatures of
people who can write checks.") 10,768.59
Citizens Bank of Festus, "Jeffries, Walter R.
or Mrs. Rosetta Jeffries" (Signature card
showed both names.) 9,572.00
Tower Grove Bank and Trust Co., "Walter
Jeffries or Rosetta Jeffries" (Signature card
not in evidence.) 8,379.04
Savings Account:
Mercantile Trust Company, "Walter R. or
Rosetta Jeffries" (Signature card shown to
have two signatures, each of which could be
used to withdraw the account.) 1,600.00
Real Estate:
Ranch home, Festus, Missouri, "property placed
in joint names."
Purchase price 10,500.00
 -----------
 $121,788.18

*444 Generally, all the signature cards are said, as in the case of the signature cards for the Southwest Bank certificates of deposit, to contain "the agreement of the parties between themselves and the bank with respect to these deposits," and both Rosetta and Walter could write checks and make withdrawals. Following Rosetta's death, Walter, in June, 1963, had all certificates of deposit reissued in his name only, and he also then, or at later times, appropriated to himself all checking and savings accounts previously held "jointly" with Rosetta.
The trial court made no findings of fact or conclusions of law other than to find "the issues herein joined in favor of Petitioner," and to enter judgment against respondent-appellant for unlawfully withholding $81,788.18 from the estate of Rosetta Jeffries. Petitioner-respondent would support the court on the theory that Rosetta was the sole source of the $121,788.88 of "discovered" assets, and that respondent-appellant by his sworn answers to interrogatories "disclaimed and disavowed any interest in any of the assets listed in the name of Rosetta together with Respondent-Appellant at the time of the death of Rosetta except the said $40,000. * * * Respondent-appellant * * * unequivocally admitted that at the time of the death of Rosetta he owned only $35,000 to $40,000 of assets jointly with his wife * * * (and thus) unequivocally admitted and disavowed * * * any interest in the difference between said $121,788.18 and said $40,000, i. e., $81,788.18."
Appellant's theory, which is dispositive of the issues in his favor, is that all the "discovered" assets were accounts and deposits held "jointly" with Rosetta or real estate held by entirety, all of which survived to him upon her death, and he, therefore, was not required to inventory them as he did the property standing in the name of Rosetta alone at her death and he could not be liable for judgment for concealing any such properties.
The evidence shows without doubt that the certificates of deposit, the checking accounts, and the savings account were all held in the names of Walter and Rosetta Jeffries, who were husband and wife at all times during the existence of the accounts and on the date of her death. Under those circumstances the accounts and deposits were held in a particular type of joint tenancy, i. e., tenancy by the entirety, which has, as one of its features, an attendant right of survivorship; and all assets so held passed to Walter upon Rosetta's death. The rule in this situation is that where the common-law estate by the entirety exists as it does in Missouri, accounts and deposits payable to a husband and wife are presumed to be held in an estate by the entirety, notwithstanding statutes relating generally to joint deposits; and the estate exists whether the husband or the wife, or both, furnish the money that goes into the account. In re Estate of O'Neal, Mo., 409 S.W.2d 85, 91 [2-5].
Respondent, in attempted support of her position, argues that any presumption as to a survivorship tenancy "was rebutted by * * * the sworn answer of Respondent-Appellant that he only owned assets of the value of $40,000 jointly with Rosetta at the time of her death."
It is true that this presumption is rebuttable "`but in order that the presumption be overthrown, the evidence must be clear, strong, unequivocal, and so definite and positive as to leave no room for doubt in mind of the chancellor.'" In re Estate of O'Neal, supra, 1. c. 91 [9].
The evidence offered to rebut the presumption here does not meet the standard of this test. Respondent directs attention to the quoted answer to Interrogatory Eleven and urges that it is a "sworn judicial admission" which caused the presumption to "vanish." The difficulty with this argument is that the answer is not a "true judicial admission (which) removes the proposition in question from the field of disputed issues," but is, at most, an admission or some "form of self-contradiction * * *, to be considered along with the *445 other evidence and circumstances in the case," May v. May, Mo.App., 294 S.W.2d 627, 634 [4-7]; and the answering party may explain or contradict such an answer at trial, Smith v. Trans World Airlines, Inc., Mo.App., 358 S.W.2d 91, 94 [4, 5]. When the evidence and circumstances are considered, it is obvious that the answer to Interrogatory Eleven does not have the suggested effect of a binding disclaimer or disavowal of any interest in the assets beyond $40,000. The approximation, $35,000 to $40,000," obviously is that of an estimate, and the true substance of the answer is that, irrespective of the approximate value placed on the assets by Walter, he stated unequivocally that whatever the assets by way of accounts and real estate, they "were held in joint names." Rather than to overcome the presumption, such statement is consistent with and strengthens the presumption. This appears more clearly when the answer is taken with recognition that Mr. Jeffries did inventory in the estate of Rosetta those assets which stood in her name alone, thus reserving to himself those assets held by entirety which became his as survivor. The answer is further clarified by the answer to Interrogatory One which was a statement of ownership in his own right and, prior to his marriage to Rosetta, of $35,000 to $45,000 in bank accounts. The answer is consistent also with his statement that after the marriage "everything * * * was placed in accounts in our joint names." Likewise, the signature cards on all such deposits and accounts recognized the interests of both Rosetta and Walter, and, under these circumstances, any appearance of rebuttal of the presumption said to arise from the answer to Interrogatory Eleven is explained. In any event, it cannot be said that the approximation of value is intended as a relinquishment of an interest in any assets which the evidence shows most clearly to have come under the ownership of Walter alone upon the death of his wife and to have been appropriated by him after that event and prior to answering the interrogatory.
Another argument advanced by respondent in support of her position is that respondent-appellant also stated in answer to Interrogatories Five and Six that he had no money in the Festus Bank and Tower Grove Bank when the evidence established that there was $9,572 in the Festus Bank and $8,379.04 in the Tower Grove Bank, both accounts being in his and Rosetta's names. The argument is that this is corroborative of the "disclaimer" charged to appellant by answer to Interrogtory Eleven. The difficulty with this argument is that it is corroborative of appellant's, rather than petitioner's interests. The interrogatories were answered on February 17, 1965, and the evidence establishing the existence of these accounts in the names of Walter and Rosetta Jeffries shows also that the Festus account was withdrawn by Walter February 11, 1965, and the Tower Grove account was withdrawn by him June 13, 1963. His answers were thus completely accurate and indicated, among other things, that both he and the banks in question recognized his right as the survivor to withdraw the accounts.
For similar reason, the Festus real estate was not subject to this concealment of assets proceeding because it, too, was held by Walter and Rosetta as tenants by the entirety and became his property at her death. The deed was not in evidence, but the answer obtained by Interrogatory Two described a conveyance to two people who were husband and wife and, as such, the conveyance "created, prima facie, an estate by the entirety." Hiatt v. Hiatt, Mo., 168 S.W.2d 1087, 1089 [5].
Judgment reversed.
HOUSER and WELBORN, CC., concur.
PER CURIAM.
The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.
All concur.