**In the ESTATE OF Jesse (Jess) FUGETT, Deceased, Appellant.**

**No. KCD 30663.**

Missouri Court of Appeals, Western District.

March 3, 1980.

Richard N. Brown, Brookfield, for appellant.

Michael Lyons Midyett, Keytesville, for respondent.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

KENNEDY, Presiding Judge.

This case began in the probate court of Chariton County, with a "petition to establish title to bank account". It was initiated by the executor of the estate of Jess Fugett, deceased, to establish title to a bank account in the Bosworth State Bank with a balance of $34,298.78, which stood in the names of "Jess Fugett" and "Maggie J. Fugett". Maggie J. Fugett was the wife of Jess Fugett, and she survived him. The probate court upon hearing awarded the proceeds of the bank account to the widow, Maggie J. Fugett, finding that it was not an asset of the Jess Fugett estate. The daughters of Jess Fugett, Veda Elaine Jacobs and Helen Marie Jacobs, appealed to the circuit court, where Maggie J. Fugett intervened and filed answer. The executor did not appeal from the probate court judgment and is not a party here.

The case was first heard by the circuit court without a jury, resulting in a finding that the disputed bank account was the property of the widow Maggie J. Fugett and was not an asset of the estate. The daughters appealed to the Missouri Court of Appeals. The circuit court judgment was reversed and the cause remanded for a new trial on the ground that the daughters had been denied a requested jury trial. 564 S.W.2d 628.

The case was retried to a jury in the Circuit Court of Chariton County, which resulted in a jury verdict in favor of the widow. From the ensuing judgment, the daughters, Veda Elaine Jacobs and Helen Marie Jacobs, have once again appealed to this court.

We affirm the judgment below.

The evidence was that Jess Fugett and Maggie J. Fugett were married December 17, 1962, and remained married until Mr. Fugett's death on August 19, 1975.

The appellants, Veda Elaine Jacobs and Helen Marie Jacobs, were Mr. Fugett's daughters by an earlier marriage.

The contested bank account dates from January 2, 1965, when an initial deposit of $4,778.54 was made. Deposits and checks up to the time of Mr. Fugett's death resulted in a balance at the time of his death of $34,298.78. The bank's ledger cards carried the name of "Fugett, Jess or Maggie". The signature card for the account, prepared at the time the account was opened, was signed with the signatures of "Jess Fugett" and "Maggie J. Fugett". They appeared on a printed card below the following language: "Below please find duly authorized signatures which you will recognize in the payment of funds or the transaction of other business on our account". Across the end of the card was the language: "Authorized signatures for First National Bank, Bosworth, Mo." The only other words on the card were "address" and "date", both of which were left blank. The cashier of the bank, Mr. Newsom, had opened the account in 1965. He testified to none of the circumstances surrounding the opening of the account.

Witness Newsom did not believe Mrs. Fugett ever wrote any checks on the account although he testified that they would have cashed a check on the account which contained only Mrs. Fugett's signature. There was other testimony of her having written one check on the account, to pay a car repair bill for Mr. Fugett, to which she signed Mr. Fugett's name. There was testimony that both Mr. Fugett and Mrs. Fugett had made deposits to the account, and testimony that Mr. Fugett alone had made deposits therein. There is no testimony in the record as to the source of any of the funds in the account.

In addition to the disputed account, Mr. Fugett had a time deposit in the bank, with a balance of $30,000 at the time of his death, which was in his individual name. There was also an account in Mrs. Fugett's sole name. The record does not disclose the amount of this account.

Appellants and their spouses testified that Jess at the time of the funeral of a son, who had died December 28, 1964, had said, in Maggie's presence, that "he had his money and she had hers"; that he on several occasions had said, "(h)e had his bank account and she had her bank account". Maggie never challenged this statement. At the time of the son's funeral, Mr. Fugett had given his daughters $100 apiece to help with their expenses in making the trip to the funeral. At that time he said, "By God, it's my money." This, of course, *antedated* the opening of the contested account. Veda Elaine Jacobs said that her father "has always said it was his money". Mrs. Fugett once told Helen Marie that she had put certain CD interest in "his" account. There was no testimony at all that Mr. Fugett, or Mrs. Fugett, in making the statements attributed to them, were referring to any specific fund or account.

Upon the foregoing evidence, the cause was submitted to the jury upon the following three verdict-directing instructions:

Instruction No. 2 was offered by the intervenor and reads as follows:

"Your verdict must be for Intervenor Maggie J. Fugett if you find:

"First, that on January 2, 1965, an account at the Bosworth State Bank was established in the names of Jess Fugett, Magie J. Fugett and continued to the date of death of the decedent, Jess Fugett, on August 19, 1975; and

"Second, that said account created an estate by the entirety between Jess Fugett and Maggie J. Fugett;

"unless you believe Intervenor is not entitled to recover by reason of Instruction No. 4."

The court gave two instructions offered by appellants who were designated "respondents" in the proceeding below. Instruction No. 3 read as follows:

"Your verdict must be for the respondents if you do not find the account was that of Jess Fugett, Maggie J. Fugett."

Instruction No. 4, also offered by appellants, read:

"Your verdict must be for the respondents if you find Jess Fugett and Maggie J. Fugett did not intend to create and maintain a tenancy by the entirety account where neither can dispose of such funds, or any part of them, without the concurrence of the other or upon checks or order signed by both of them."

The jury returned its verdict in favor of the intervenor.

The appellants advance several criticisms of Instruction No. 2, which we will take up in order:

First, appellants say that the first finding required by the instruction "prejudicially submitted an established factual matter not contested in evidence".

■ We have searched the record, including the motion for a new trial, and find that this criticism is first mentioned in appellant's brief in this court. The point, in order to be preserved for review, must have been made at the time the instruction was given or in the motion for a new trial. Rule 70.03. When it first appears in appellant's brief it is too late. *Erny v. Revlon, Inc.*, 459 S.W.2d 261, 267 (Mo.1970); *Hereford Concrete Products, Inc., v. Aerobic Services, Inc.*, 565 S.W.2d 176, 177 (Mo.App. 1978). There is, in any case, no merit to the complaint.

■ Next, appellant says that the finding required by Paragraph "Second" was "a prejudicially positive, emphatic statement of only a presumption arising from 'first' ".

The instruction, however, does not say that the jury should find that the account was an estate by the entirety if they found the facts in paragraph first, or that the finding of the facts in paragraph second necessarily follows the finding of the facts in paragraph first. Paragraph second requires that the jury find, *in addition* to the facts of paragraph first, that the account did create an estate by the entirety between Jess Fugett and Maggie J. Fugett. Appellants' complaint is not justified.

■ Appellants' next criticism of Instruction 2, which also must be disallowed, is

that "estate by the entirety" is not defined in the instruction. They are correct in saying that where an "estate by the entirety" or "tenancy by the entirety" is hypothesized in an instruction, the jury should be given a definition. The term is one of those technical legal terms with which a jury of laymen would not be familiar. *Brewer v. Swift*, 451 S.W.2d 131, 133 (Mo. banc 1970); *Knight v. Glenn Falls Ins. Co.*, 20 S.W.2d 941, 943 (Mo.App.1929).

However, the appellants themselves offered a definition of "tenancy by the entirety" in their Instruction No. 4, as one "where neither can dispose of such funds, or any part of them, without the concurrence of the other or upon checks or order signed by both of them". Apparently the appellants were satisfied with this definition, for it was in an instruction offered by them. As further evidence that they approved this definition, they attached the following instruction to their motion for a new trial, alleging that it was tendered by them and refused by the court: "A 'tenancy by the entirety account' means an account of husband and wife where neither can dispose of such funds, or any part of them, without the concurrence of the other or upon checks or orders signed by both of them." We do not endorse this as an authoritative definition of a tenancy by the entirety, but have copied it here only to show further that the definition included in Instruction 4 was the definition for which the appellants opted at the trial.

■ It is very likely true, as the appellants argue, that it would have been more fitting to have the term "tenancy by the entireties" or "estate by the entireties" defined by a separate instruction, since the term was used in two separate instructions. (For example, in the "Notes on Use", MAI 11.06 (1977 Revision), with reference to a definition of "negligent" or "negligence", it

is said: "Where either or both terms are used in only one instruction, this definition may be added to the instruction using the term. If they are used in more than one instruction, the definition should be given as a separate instruction.")

The court gave the only instruction offered by appellant which contained appellants' definition of "tenancy by the entirety". The record does not show that they offered a separate definitional instruction which was refused by the court.[1]

■ We are led to these conclusions: The jury had before it a definition of "tenancy by the entirety", a definition which was satisfactory to the appellants. While it would have been preferable to have the term defined by a separate instruction, still the jury had before it a definition endorsed by the appellants. If the meaning of a term can be gathered by the jury from the charge as a whole, especially where a separate definitional instruction is not offered by appellant, then the fact that the definition is not the subject of a separate instruction is not an occasion for reversal. *Maryland Casualty Co. v. Spitcaufsky*, 352 Mo. 547, 178 S.W.2d 368, 372 (Mo.1944); *Goodwin v. S. J. Groves & Sons Co.*, 525 S.W.2d 577, 581–2 (Mo.App.1975); *Kelso v. C.B.K. Agronomics, Inc.*, 510 S.W.2d 709, 726 (Mo.App.1974); *State ex rel. Sappington v. American Surety Co. of New York*, 41 S.W.2d 966, 968 (Mo.App.1931); *Dichherber v. Turnbull*, 31 S.W.2d 234, 237 (Mo.App. 1930).

■ Appellants next predicate error, if we understand their brief, upon the failure of the instructions to differentiate between a "joint account" and a "tenancy by the entirety account". Appellants apparently feel that it would have been to their advantage to have the instructions explain to the jury the difference between a "joint tenan-

---

1. Appellants' separate instruction defining "tenancy by the entirety", earlier referred to, was attached to appellants' motion for a new trial as an exhibit. Nothing in the record shows that it was formally offered by appellants. It was not marked "refused" by the court nor filed in accordance with Supreme Court Rule 70.02(d). In order to preserve for review any error in refusing such instruction, the procedure of said Supreme Court Rule must be followed. An allegation in the motion for a new trial that such an instruction was offered and refused does not prove itself. *Holt v. Rabun*, 519 S.W.2d 561 (Mo.App.1975).

cy account" and a "tenancy by the entirety account". The advantage to appellants is not too obvious, since in either case Maggie Fugett, the widow, would have succeeded to the account upon Jess Fugett's death. The bank cashier, Mr. Newsom, once in his testimony referred to the contested account as a "joint account", and said the bank would have paid a check signed by either one of the depositors. However, if the appellants felt that the "joint tenancy" matter was a false issue which ought to be withdrawn from the jury's consideration, it was their privilege to offer a withdrawal instruction. *Temple v. Atchison, Topeka & Santa Fe Ry. Co.*, 417 S.W.2d 97, 99 (Mo.1967); *Schmid v. Langenberg*, 526 S.W.2d 940, 943 (Mo.App. 1975); MAI 34.01, 34.02. They did attach to their motion for new trial an instruction purporting to define "joint tenancy account", and alleged in the motion for a new trial that the court erred in failing to give such instruction. However, they did not follow the procedure of Supreme Court Rule 70.02(d), by which the proponent of the instruction tenders it to the court who, if he refuses it, so marks it and files it in the case. It is then a part of the record for review by the appellate court. It is not sufficient to attach a refused instruction to the motion for a new trial, for the allegations of a motion for a new trial do not prove themselves. *Holt v. Rabun, supra* n. 1.

■ Leaving the appellants' complaints about the instructions, we take up their argument that "the trial court erred in not setting aside the verdict and judgment and entering judgment for appellants, as the only evidence was that all parties to the account (spouses and bank) universally treated the account as other than a tenancy by the entirety account".

We treat this as an attack upon the sufficiency of the evidence to sustain the jury verdict in favor of the widow, Maggie Fugett. It is in order here to repeat a quotation from *Fulton v. Fulton*, 528 S.W.2d 146, 158[28–31] (Mo.App.1975), which was quoted in the earlier *Fugett* case, *supra* at 631: "It matters not that the account did not

designate them as being husband and wife, for they were that in fact at all times herein concerned. *State Bank of Poplar Bluff v. Coleman*, 241 Mo.App. 600, 609, 240 S.W.2d 188, 190 (1951). Under such conditions and irrespective of statutes relating to joint bank accounts [*McIntyre v. McIntyre*, 377 S.W.2d 421, 425[7] (Mo.1964)], the account and deposits thereto are presumed to be held in an estate by the entirety whether the husband or the wife or both furnished the monies that went into the account. *In re Estate of Jeffries*, 427 S.W.2d 439, 444[2] (Mo.1968); *In re Estate of O'Neal*, 409 S.W.2d 85, 90–9[2–5] (Mo. 1966). Although the presumption is rebuttable, the evidence to overthrow it must be so strong, clear, positive, unequivocal and definite as to leave no doubt in the chancellor's mind. *In re Estate of Jeffries, supra*, 427 S.W.2d at 444[3]."

The evidence, as shown by our recital at the beginning of this opinion, was entirely sufficient to support the jury's verdict and the judgment for the respondent.

The judgment is affirmed.

All concur.